NORTHWESTERN CABINET CO., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12257. Promulgated September 25, 1928.

*George D. Wick, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

SMITH: Petitioner contends that it is entitled to include in invested capital as of January 1, 1920, $110,250, representing the sale price of 735 shares of its capital stock subscribed for by its employees during the early part of the year. The respondent has allowed the inclusion in invested capital of only the amounts of cash paid in by the employees under the subscription agreements from the date of such payments and has disallowed the inclusion of the balance. The petitioner insists that if it is not entitled to include the unpaid stock subscriptions it likewise should not be required to include in gross income of 1920 the interest which accrued upon such unpaid subscriptions.

The stock subscription agreements were all dated January 1, 1920. It is in evidence, however, that they were not signed on that date and that many of them were not signed until on or after March 27, 1920. It would appear from the evidence that the agreements were signed on or about April 1, 1920.

Section 326 (a) of the Revenue Act of 1918 permits a corporation to include in invested capital, among other items:

(1) Actual cash bona fide paid in for stock or shares;
(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment. * * *

Section 325 (a) defines the term "tangible property" as meaning "stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property."

The petitioner contends that the contracts were worth their face value at the time they were executed and that the contracts were "paid in" for the shares of stock subscribed for.

In *La Belle Iron Works* v. *United States*, 256 U. S. 377, it was stated:

In order to adhere to this restricted meaning [of the word "invested"] and avoid exaggerated valuations, the draftsman of the act resorted to the test of including nothing but money, or money's worth, actually contributed or converted in exchange for shares of the capital stock, or actually acquired through the business activities of the corporation or partnership (involving again a conversion) and coming in *ab extra*, by way of increase over the original capital stock. How consistently this was carried out becomes evident as the section is examined in detail. Cash paid in, and tangible property paid in other than cash, are confined to such as were contributed for stock or shares in the corporation or partnership; and the property is to be taken at its actual cash value "at the time of such payment"—distinctly negativing any allowance for appreciation in value.

The court further stated in the same opinion:

A scrutiny of the particular provisions of section 207 [Revenue Act of 1917] shows that it was the dominant purpose of Congress to place the peculiar

burden of this tax upon the income of trades and businesses exceeding what was deemed a normally reasonable return upon the capital actually embarked.

The observation of the court in the above-entitled case had reference to the provisions of the Revenue Act of 1917, but they are equally applicable to the Revenue Act of 1918. The question for our determination is whether $150 or tangible property of an equal value was actually " paid in " to the petitioner for each share of stock subscribed for by the employee of the petitioner at the date of the signing of the subscription agreement in such a way as to be " embarked " in the business enterprise.

In *Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190, we held that a stock subscription of itself can not be regarded as property paid in for shares of capital stock under the invested capital provisions of the Revenue Act of 1918; that consequently a corporation may not include in invested capital the amount of unpaid subscriptions to its capital stock. We have also held that only payments on stock subscriptions may be included in invested capital from the date of such payments. *Barker-Jennings Hardware Co.*, 4 B. T. A. 20; *Meadows & Co.*, 5 B. T. A. 241; *Mossberg Pressed Steel Corporation*, 9 B. T. A. 1161; *Baker-Vawter Co.*, 7 B. T. A. 594. We have also held that the requirement that the subscriber should pay interest upon deferred payments of the subscription price did not warrant the inclusion of the unpaid stock subscriptions in invested capital. *Barker-Jennings Hardware Co.*, supra; *Baker-Vawter Co.*, supra.

An inspection of the subscription agreement shows that each employee signing the same was required to pay into the corporation $150 cash for each share subscribed for. The respondent has permitted the inclusion in invested capital of the amounts of cash paid in under those subscription agreements from the dates of payment. How can it be contended that anything more should be included in invested capital? A subscriber for the capital stock of a corporation is often bound by his subscription to make the payments agreed to be made. But are the amounts to be included in invested capital in advance of the payments? If so, the invested capital may be built up to a large extent by the subscriptions of stockholders and the stockholder himself have the use of the money. We think that a proper interpretation of the statute requires that there be included in the invested capital only the amounts paid in under stock subscription agreements.

This case is sharply to be differentiated from a case where promissory notes are paid in by a subscriber for stock and received by the corporation in payment for the stock. In *Hewitt Rubber Co.*, 1 B. T. A. 424, we held that promissory notes of a responsible and solvent maker actually and in good faith paid in for stock of a corporation was includable in invested capital. To the same effect see *Bowers* v. *Max Kaufmann & Co.*, 18 Fed (2d) 69. In the instant

proceeding the evidence is not satisfactory that the contracts, which were bilateral contracts between the employees and the petitioner, were paid in to the petitioner for the shares of stock. If the contracts are claimed to be property other than cash paid in for the shares of stock, it does not appear that the provisions of the Iowa statutes relating to the issuance of stock for property other than cash were complied with. The Code of Iowa (1924) provides in part as follows:

8412. *Par Value Required.* No corporation organized under the laws of this state, except building and loan associations, shall issue any certificate of a share of capital stock, or any substitute therefor, until the corporation has received the par value thereof. [Session 1913, § 1641-b; 40 Ex. Gen. Assembly, House File 202, § 3.]

8413. *Payment in Property Other Than Cash.* If it is proposed to pay for said stock in property or in any other thing than money, the corporation proposing the same must, before issuing capital stock in any form, apply to the executive council of the state for leave so to do. Such application shall state the amount of capital stock proposed to be issued for a consideration other than money, and set forth specifically the property or other thing to be received in payment for such stock. [S., '13, § 1641-b; 40 Ex. G. A., H. F. 202, § 4.]

8414. *Executive Council to Fix Amount.* The executive council shall make investigation, under such rules as it may prescribe, and ascertain the real value of the property or other thing which the corporation is to receive for the stock. It shall enter its finding, fixing the value at which the corporation may receive the same in payment for capital stock; and no corporation shall issue capital stock for the said property or thing in a greater amount than the value so fixed. [S., '13, § 1641-b; 40 Ex. G. A., H. F. 202, § 5.]

\* \* \* \* \* \* \*

8416. *Certificate of Issuance of Stock.* It shall be the duty of every corporation to file a certificate under oath with the secretary of state, within ten days after the issuance of any capital stock, stating the date of issue, the amount issued, the sum received therefor, if payment be made in money, or the property or thing taken, if such be the method of payment. [S., '13, § 1641-c.]

8417. *Cancellation of Stock—Reimbursement.* The capital stock of any corporation issued in violation of the terms and provisions of the five preceding sections shall be void, and in a suit brought by the attorney general on behalf of the state in any court having jurisdiction, a decree of cancellation shall be entered; \* \* \* [S., '13, § 1641-d.]

The subscription contract specifically provides that the stock should "be and remain in the possession of the first party until fully paid for." The fact that dividends were paid upon the stock subscribed for and that the subscribers were notified of stockholders' meetings subsequent to the date of their subscriptions is not, in our opinion, sufficient to show that the stock was issued for the contracts.

The petitioner claims that it is entitled to include in invested capital the subscription contracts in question, under the provisions of article 833 of Regulations 45, which provides:

*Tangible property paid in: evidences of indebtedness.*—Enforcible notes or other evidences of indebtedness, either interest-bearing or noninterest bearing, of the subscriber received by a corporation upon a subscription for stock may be considered as tangible property in computing its invested capital to the extent of the actual cash value of such notes or other evidences of indebtedness at the time when paid in, but only (*a*) if such notes or evidences of indebtedness could under the laws of the jurisdiction in which the corporation was organized legally be received in payment for stock, and (*b*) if they were actually received by the corporation as absolute, and not as conditional, payment in whole or in part of the stock subscription.

The evidence does not show, however, that the contracts were received by the petitioner " as absolute, and not as conditional, payment in whole or in part of the stock subscription." Upon the evidence of record the exclusion from invested capital of unpaid subscriptions to capital stock is sustained.

Petitioner makes the alternative contention that, if it is not to be allowed to include in invested capital the unpaid subscriptions to its capital stock, it should not be required to return as income the interest which accrued upon such unpaid subscriptions. This does not follow, however. Invested capital must be computed in accordance with the statute. The fact that an instrument upon which interest is received by the taxpayer may not be included in invested capital is no ground for holding that the interest itself is not taxable as income. For instance, if a corporation had developed a patent without cost to itself subsequent to March 1, 1913, and sold the patent under a contract on which it was to receive interest and did receive interest, the value of the contract would not be includable in invested capital, provided, of course, the corporation was organized prior to the date the patent was secured. Is it any valid argument that, because the value of the contract may not be included in invested capital, the interest received upon the contract should not be included in gross income? Section 213 (a) of the Revenue Act of 1918 defines gross income as including " gains, profits, and income derived from * * * interest, * * *." The petitioner derived income from interest in 1920 on stock subscription agreements. The interest was available to the petitioner for any purpose, the same as income from any other source. We think that the amount of interest accrued upon the subscription agreements was properly included in the gross income of the petitioner. We have held to the same effect in *Baker-Vawter Co., supra.* That decision is controlling here.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LANSDON and ARUNDELL dissent.